## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## OCALA DIVISION

**SUNSHINE STONE PRODUCTS, LLC,**
**a Florida Limited Liability Company**

      **Plaintiff,**

**v.**                                                         **Case No:5:12-CV-293-Oc-34PRL**

**THOMAS BRUTON**

      **Defendant.**

_____

## REPORT AND RECOMMENDATION[1]

Pending before the Court is Defendant's Motion to Dismiss for Improper Service and Lack of Personal Jurisdiction (Doc. 12) to which Plaintiff filed a response in opposition. (Doc. 16).  On April 4, 2013, the District Judge referred the Motion to the undersigned for preparation of a report and recommendation regarding the appropriate resolution of the Motion. (Doc. 25). On April 16, 2013, the undersigned heard oral argument on the motion.  For the reasons discussed below, Defendant's motion is due to be **DENIED**.

### I. BACKGROUND

### A. The Parties

Plaintiff Sunshine Stone Products, LLC (hereinafter "Sunshine Stone") is a Florida limited liability company formed on or about June 10, 2005 with its principal place of business in Ocala, Florida.  Sunshine Stone sells stone products, including tiles.  David and Kim Scofield

---

[1]     Specific written objections may be filed in accordance with 28 U.S.C. § 636, and Rule 6.02, Local Rules, M.D. Fla., within fourteen (14) days after service of this report and recommendation.  Failure to file timely objections shall bar the party from a _de novo_ determination by a district judge and from attacking factual findings on appeal.

are both managing members of Sunshine Stone.   (Docs. 16-1 & 16-2).   Defendant Thomas Bruton (hereinafter "Bruton") is an individual residing in Santa Clara County, San Jose, California.

### B. Factual Background[1]

Plaintiff alleges that since as early as June 11, 2008 it has been doing business in the United States and abroad using the distinctive word mark "TOEMI" and the stylized version of the mark "TOEMI" as trademarks in connection with stone tiles (the "TOEMI Marks").  Plaintiff has acquired trademark rights to the TOEMI Marks both at common law and by virtue of the trademark registrations with the United States Patent and Trademark Office. (Copies of the trademark registrations are attached to the Amended Complaint as Exhibits A & B).

On April 13, 2012, Defendant acquired the Internet domain name "toemi.co" (and "toemi.mobi," "toemi.me," and "toemi.tv") and has been operating a website at URL toemi.co which purports to be a "directory of pebble [stone] tile manufacturers and distributors" ("Defendant's Website"). (A screen shot of Defendant's Website is attached to the Amended Complaint as Exhibit C).  Defendant's Website "prominently displays" Plaintiff's TOEMI marks and uses the term "Toemi" alone and in combination to attract visitors to the website. Defendant's Website has a hyperlink to a blog at URL toemi.wordpress.com ("Toemi Blog") that displays Plaintiff's TOEMI's Marks throughout the blog.  (A screen shot of the Toemi Blog is attached as Exhibit D to the Amended Complaint).  The Toemi Blog includes a post allegedly posted by Bruton entitled, "Pebble Tile (buyers  beware)" which according to Plaintiff contains numerous false and misleading statements made for the purpose of harming the reputation and economic interests of Plaintiff, and deceiving customers and potential customers of the parties as

---

[1] The "facts" in this section are taken from Plaintiff's Amended Complaint. (Doc. 6).

to the ownership of the TOEMI brand.  (A screen shot of this Toemi Blog post is attached to the Amended Complaint as Exhibit E).  For example, the post states, "Sunshine Stone Products, located in Ocala Florida is one such offender" . . . "trying to mislead or 'pass off' imitation products using our Trademarked TOEMI™, TOEMI™ISLAND ROCK, and TOEMI™ name and logos."

Plaintiff alleges that the marks used by Defendant -- TOEMI™, TOEMI™ISLAND ROCK, and TOEMI™ name and logos -- have never been registered by Defendant in the United States, have never been trademarked by Defendant, and have not been used by Defendant in commerce or otherwise in the United States in connection with stone tiles since at least June 2008.[2]  Plaintiff alleges that the marks used by Defendant -- TOEMI™, TOEMI™ISLAND ROCK, and TOEMI (stylized) -- and the domain names used by Defendant – toemi.co, toemi.mobi, toemi.me, toemi.tv, and toemi.wordpress.com—are identical to or so resemble Plaintiff's TOEMI Marks as to be likely to cause confusion, to cause mistake, or to deceive.

Plaintiff alleges that on October 10, 2009, it sent a cease and desist letter requesting that Defendant cease and desist making infringing uses of the TOEMI Marks but that Defendant ignored the letter and has continued to use Plaintiff's TOEMI Marks in the form of trademarks and the term TOEMI as part of the infringing domain names.

On May 1, 2012,  Defendant sent an email to Sunshine Stone in Ocala, Florida advising that he had been approached by a third party with an offer to purchase the domain names www.toemi.co,          www.toemi.mobi,          www.toemi.me,          www.toemi.tv,          and

---

[2] In his Affidavit, Defendant avers that: he is the sole shareholder and owner of Toemi, Inc. a Colorado corporation created in 1999; Toemi, Inc. first used the Toemi trademark and Toemi logo in commerce nationally and internationally and later by its successor-in-interest; and the Toemi trademark and the Toemi logo have been in use at business trade shows, publications with national and international circulation, multi-state advertising and via the internet. (Doc. 12-1).

www.toemi.wordpress.com, all of which are owned by Defendant, and soliciting Sunshine Stone to make an offer for their purchase. (A copy of the email is attached as Exhibit C to the Scofield Affidavits).

### C. Procedural Background

Plaintiff then filed the instant action.  The Amended Complaint (Doc. 6) consists of six counts – trademark infringement under 15 U.S.C. §1114(1); federal unfair competition under 15 U.S.C. §1125(a); cybersquatting under 15 U.S.C. 1125(d); trademark infringement under Florida common law; unfair competition under Florida common law; and tortious interference with business relations under Florida common law.  Defendant has moved to dismiss Plaintiff's Amended Complaint arguing that he was not properly served and that the Court lacks personal jurisdiction over him under the Florida long-arm statute and constitutional due process requirements.

### II.  <u>DISCUSSION</u>

### A.    Service

In order to exercise personal jurisdiction over a party there must be valid service of process.  *Vax-D Medical Technologies, L.L.C. v. Allied Health Management, Ltd.*, No. 8:04-cv-1617-T-26TGW, 2006 WL 5646210, at *1 (M.D. Fla. May 4, 2006).  Here, the return of service shows that Defendant purportedly was served on June 30, 2012 at 46 Avenida Espana, San Jose, California 95139 (the "Stated Address") by substituted service by leaving copies of the summons and amended complaint with or in the presence of a "John Doe" occupant and then by mailing copies by First Class mail, postage prepaid to the Stated Address. (Doc. 8).

Pursuant to Federal Rule of Civil Procedure 4(e)(1), an individual may be served in a judicial district of the United States by "following state law for serving a summons in an action

brought in courts of general jurisdiction in the state where the district court is located or where service is made."  Plaintiff contends that it, through its agent S&R Services, effected substitute service at Defendant's "usual mailing address" as provided by California Code of Civil Procedure §415.20(b) which states:

> If a copy of the summons and complaint cannot with reasonable diligence be personally delivered to the person to be served, as specified in Section 416.60 [minors], 416.70 [adult with guardian, etc.], 416.80 [pursuant to Elections code], or 416.90 [a person not otherwise specified in this article], a summons may be served by *leaving a copy of the summons and complaint at the person's* dwelling house, usual place of abode, usual place of business, or *usual mailing address other than a United States Postal Service post office box, in the presence of a competent member of the household* or a person apparently in charge of his or her office, place of business, or usual mailing address other than a United States Postal Service post office box, *at least 18 years of age, who shall be informed of the contents thereof, and by thereafter mailing a copy of the summons and of the complaint by first-class mail, postage prepaid to the person to be served at the place where a copy of the summons and complaint were left.*  Service of a summons in this manner is deemed complete on the 10the day after the mailing.  (Emphasis added).

Plaintiff filed an Affidavit of Reasonable Diligence detailing the efforts that S&R Services took to serve Defendant via personal delivery before resorting to substitute service pursuant to §415.20(b). (Doc. 16, Exhibit A).  After attempting to serve Defendant three times at the Stated Address, Plaintiff's agent performed a postal verification with the San Jose, CA Postmaster to confirm whether Defendant received mail at the Stated Address.  (Doc. 16, Exhibit B).  On June 27, 2012, Plaintiff's agent received confirmation from the San Jose, CA Postmaster that Defendant still receives mail at the Stated Address.  (Doc. 16, Exhibit A). Upon receiving this confirmation, Plaintiff's agent attempted to personally serve Bruton one more time at the Stated Address.  (Doc. 16, Exhibit A).  On June 30, 2012, Plaintiff's agent left copies of the summons and complaint with a 55-year old "John Doe" occupant at the Stated Address and informed him of the general nature of the papers and mailed copies by First Class mail, postage prepaid to the Stated Address. (Doc. 16, Exhibit C).

In his Affidavit, Defendant avers that he does not currently reside at the Stated Address, nor has he resided there for nearly a year; and that it is not his place of abode, nor was it on the date of service.  (Doc. 12-1).  Even assuming Bruton's averments are true, they do not refute Plaintiff's contention – supported by the Postmaster's Verification– that at the time of service the Stated Address was Defendant's "usual mailing address."[3]

Accordingly, the undersigned finds that Defendant was validly served.   Plaintiff exercised reasonable diligence in its efforts to serve Defendant before effecting substitute service pursuant to §415.20(b).

### B.    Personal Jurisdiction

Next, Defendant argues that he is not subject to *in personam* jurisdiction in Florida because he lacks the requisite contacts for the court to assert jurisdiction.  Plaintiff initially must establish a *prima facie* case of personal jurisdiction over a nonresident defendant.  "A *prima facie* case is established if the plaintiff presents sufficient evidence to defeat a motion for a directed verdict."  *Cable/Home Communication Corp. v. Network Prods., Inc.*, 902 F.2d 829, 855 (11th Cir. 1990) (quoting *Morris v. SSE, Inc.,* 843 F.2d 489, 492 (11th Cir. 1988)).  The burden then shifts to the defendant to file affidavits containing allegations that, if taken as true, show that the defendant's conduct does not make him or her amenable to service. *Acquadro v .Bergeron*, 851 So.2d 665, 672 (Fla. 2003).  Where a defendant submits such affidavits, the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction -- unless the affidavits contain only cursory assertions that the defendant is not subject to

---

[3]  Plaintiff also offered evidence that on April 13, 2012 Defendant registered the domain names www.toemi.co and www.toemi.me, under his own name and identified his address as the Stated Address. (Docs. 16-1, 17-1).  Likewise, on April 27, 2012, Defendant registered the domain name www.toemi.tv under his own name and identified his address as the Stated Address. (Docs. 16-1, 17-1).

jurisdiction. *Meier ex rel. Meier v. Sun Intern. Hotels, Ltd.*, 288 F.3d 1264, 1269 (11th Cir. 2002). Where the plaintiff's complaint and supporting evidence conflict with the defendant's affidavits, the court must construe all reasonable inferences in favor of the plaintiff. *Id.*

In the instant case, Plaintiff has made the requisite *prima facie* showing in its Amended Complaint. Plaintiff alleges that Defendant is and has conducted business with Plaintiff on a systematic and continuous basis in the State of Florida. (Doc. 6 at ¶¶6, 7). Plaintiff also alleges that a substantial part of the events giving rise to the claims occurred in this judicial district, as Defendant intentionally and purposefully directed tortious conduct at a Florida resident by, *inter alia*: (1) advertising the products of others under brand names and domain names likely to deceive, confuse, and mislead purchasers and prospective purchasers as to the origin of said products in violation of Plaintiff's trademark rights; and (2) registering domain names comprising Plaintiff's trademark and then soliciting Plaintiff to purchase said domain names (squatting). (Doc. 6 at ¶7). In addition, Plaintiff alleges that the products advertised by Defendant under Plaintiff's trademark are in direct competition with Plaintiff and are targeted to customers all over the United States, including in the State of Florida. (Doc. 6 at ¶7).

Accordingly, the burden shifted to Defendant to show that the Court does not have personal jurisdiction. Along with his motion to dismiss (Docs. 12), Defendant submitted his own affidavit. (Doc. 12-1). In his affidavit, Defendant avers that he does not have a place of business in Florida and that he does not do business in the State of Florida as an individual. Because Defendant has produced a non-cursory affidavit in support of his jurisdictional challenge, the burden shifts to Plaintiff to produce evidence supporting an exercise of *in personam* jurisdiction.

Plaintiff has offered additional support through declarations filed in response to the motion to dismiss.[4]

In determining whether the court has personal jurisdiction over a nonresident defendant the court employs a two-part analysis. *Horizon Aggressive Growth v. Rothstein-Kass,* 421 F.3d 1162, 1166 (11th Cir. 2005). First, the court must determine if jurisdiction can be obtained over the defendants under Florida's long-arm statute. *Id*. If so, the court must then decide whether the nonresident defendant has sufficient "minimum contacts" with Florida to satisfy the constitutional requirements under the Due Process Clause of the Fourteenth Amendment so that maintenance of the suit "does not offend 'traditional notions of fair play and substantial justice.'" *Id*.

### 1. Florida's Long-Arm Statute

Because Florida law dictates the reach of the long-arm statute, this Court must interpret it in the same way that the Florida Supreme Court would. *Id.* at 1166-67. Florida's long-arm statute provides for two types of personal jurisdiction: specific jurisdiction under §48.193(1), where a party's contacts with the forum relate to the cause of action and general jurisdiction under §48.193(2), where a party's contacts are unrelated to the litigation, but nonetheless are "continuous and systematic," such as owning property, running a business, or maintaining a bank account.

In his Motion to Dismiss (and at the hearing), Defendant concedes that "claims of Trademark Infringement, Unfair Competition, Cybersquatting and Tortious Interference are torts of the kind which a Florida court may exercise jurisdiction over a nonresident defendant where

---

[4] Plaintiff filed the Declaration of David Scofield (Doc. 16-1) and the Declaration of Kim Scofield (Doc. 16-2).

the due process requirement is also met." (Doc. 12 at 5).     Moreover, the Eleventh Circuit has consistently held that §48.193(1)(b)[5] of Florida's long-arm statute permits jurisdiction over a defendant who commits a tortious act outside the state resulting in injury inside the state. *Licciardello v. Lovelady*, 544 F.3d 1280, 1283 (11th Cir. 2008);  *Posner v. Essex Ins. Co., Ltd.*, 178 F.3d 1209, 1217 (11th Cir. 1999)(recognizing split among the Florida appellate courts and holding that "we are bound in this case to follow [the Eleventh Circuit's] firmly established precedent, which interprets subsection (1)(b) to apply to defendants committing tortious acts outside the state that cause injury in Florida"); *Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 257 (11th Cir. 1996).   Plaintiff has alleged facts, demonstrating that its injury occurred in Florida.

Accordingly, this Court has personal jurisdiction over Defendant pursuant to subsection (1)(b) of the long-arm statute based on Defendant's concession and because Defendant allegedly breached a duty and as a result Plaintiff allegedly suffered injury in Florida.

### 2. Due Process

Having determined that the claims against the Defendant fall under the Florida long-arm statute, the Court must next determine whether Defendant has sufficient minimum contacts with the forum to satisfy the due process requirements of the Fourteenth Amendment of the Constitution so that the exercise of personal jurisdiction does not offend "'traditional notions of

---

[5] This subsection provides "[a]ny person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself and, if he or she is a natural person, his or her personal representative to the jurisdiction of the courts of this state for any cause of action arising from the doing of any of the following acts:
    . . .
(b) Committing a tortious act within this state."

fair play and substantial justice.'" *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945).

The Eleventh Circuit utilizes a three-part test to decide whether there are sufficient minimum contacts:

> [f]irst, the contacts must be related to the plaintiff's cause of action . . . Second, the contacts must involve some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum . . . Third, the defendant's contacts with the forum must be such that the defendant should reasonably anticipate being haled into court there.

*Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1220 (11th Cir. 1999) (quoting *Vermeulen v. Renault, U.S.A., Inc.*, 985 F.2d 1534, 1546 (11th Cir. 1993)).

As discussed above, and as outlined below, the minimum contacts alleged by Plaintiff are largely directed to the cause of action and therefore relate to specific jurisdiction. Accordingly, the first part of the test - i.e. that the contacts are related to the cause of action - is established.

In support of its argument that the court has jurisdiction over Defendant, Plaintiff alleges through the Amended Complaint and declarations by David and Kim Scofield numerous contacts that Defendant had with the State of Florida.

(1)     In early March 2004, Bruton formed a business relationship with the Scofiel ds whereby they became Bruton's distributor of Toemi branded products, replacing his former Florida distributor;

(2)     On or about April 1, 2004, the Scofields purchased from Bruton 20 cases of Toemi branded product for resale; they paid by check payable to Thomas Bruton which he cashed; and Bruton personally delivered the 20 cases in Florida.

(3)     The Scofields subsequently purchased Bruton's entire remaining inventory of Toemi branded product which was shipped to the Scofields in Ocala, Florida.

(4)     From April 2004 through 2008, the Scofields regularly (usually

monthly) submitted purchase orders to Bruton who fulfilled the orders and arranged for shipment of the Toemi branded product from Indonesia to Ocala, Florida.  Payment was made by wire transfer to Bruton or, to his wife, Ning Warningsih, in Indonesia.

          (5)       From June 2005 through 2008, Bruton attended several business meetings at Sunshine Stone Products, LLC in Ocala, Florida, often staying at the Scofield's Ocala home, including on or around December 26, 2005, June 2006, and early 2007, late 2007, and March 2008.

          (6)       On or about April 29, 2008 through May 2, 2008, Bruton and his wife came to Florida for the Florida Coverings convention in Orlando and stayed as guests at the Scofields house.

          (7)       In September or October 2008, Bruton came to Florida and stayed in the Scofield's home for ten days to collaborate on a new business start up which never came to fruition.

          (8)       On May 1, 2012, Bruton sent an email to Sunshine Stone in Ocala, Florida advising that he had been approached by a third party with an offer to purchase the domain names www.toemi.co, www.toemi.mobi, www.toemi.me, www.toemi.tv, and www.toemi.wordpress.com, all of which are owned by Bruton, and soliciting Sunshine Stone to make an offer for their purchase.

     If true, these allegations show that Defendant made continuous and systematic contacts with the Scofields and Sunshine State Products, LLC in Florida over the course of at least a four year period.  These alleged contacts are sufficient to show that Bruton purposefully availed himself of the privilege of conducting activities within Florida and he should reasonably have anticipated being haled into court here.  Indeed, a defendant has "fair warning" that a particular

activity may subject him to the jurisdiction of a foreign sovereign, where, as here, the defendant purposefully directed his activities at the forum and the litigation resulted from alleged injuries that "arise out of or relate to" those activities. *Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 258 (11th Cir. 1996)(citations omitted.)

Nonetheless, Defendant argues that his contacts with the state of Florida were not in his individual capacity but rather through Toemi, Inc. and later by an unidentified successor-in-interest.  Plaintiff, however, has offered evidence that Toemi, Inc. was dissolved on November 1, 2001 (more than two years before any of the alleged events in this case); that Defendant never represented that he was acting on behalf of Toemi, Inc., or any successor thereof, or any other business, company, or organization; that Defendant never disclosed that he was involved in any business entity, company or organization during this time period; and that he held himself out as a sole proprietor. (Docs. 16-1, 16-2).   Where, as here, Plaintiff's Amended Complaint and supporting evidence conflict with Defendant's affidavit, the court must construe all reasonable inferences in favor of Plaintiff.   *Meier ex rel. Meier v. Sun Intern. Hotels, Ltd.*, 288 F.3d 1264, 1269 (11th Cir. 2002).   Based on the evidence, the Court can reasonably infer for purposes of the instant Motion that Defendant's repeated and varied contacts with the State of Florida were in his individual capacity.

Moreover, the Court's exercise of personal jurisdiction over Defendant comports with traditional notions of fair play and substantial justice.  The Court must consider: (1) the burden on Defendant of defending the suit in Florida; (2) Florida's interest in adjudicating the suit; (3) Plaintiff's interest in obtaining effective relief; (4) the interests of the interstate judicial system in using resources efficiently; and (5) the interests of the states in furthering shared substantive policies. *Posner v. Essex Ins. Co., Ltd.,* 178 F.3d 1209, 1221(11th Cir. 1999).

First, the burden on Defendant caused by litigating in Florida is mitigated by "modern methods of transportation and communication." *Id.* Moreover, Defendant's more than isolated contacts with Florida between 2004 and 2008 -- i.e., business meetings in Florida, shipment of Toemi branded product to Sunshine Stone in Ocala, personal delivery of products to Sunshine Stone in Florida, and email communication with the Scofields and Sunshine Stone -- demonstrate that access to Florida is not overly burdensome for him. *Id.* Second, the State of Florida has a strong interest in seeing this matter resolved in Florida, as the dispute involves torts allegedly committed by a non-resident that caused injury to a Florida LLC. *Robinson v. Giarmarco & Bill, P.C.,* 74 F.3d 253, 259 (11th Cir. 1996). Third, Sunshine Stone "a Florida resident, has a great interest in the convenience of litigating in [its] home state." *Id.* Finally, Defendant has not shown (let alone argued) that exercising jurisdiction over it would thwart any interest of the states in furthering shared policies or using resources efficiently. Under these circumstances, exercising jurisdiction over Defendant does not offend traditional notions of fair play and substantial justice. Accordingly, Defendant's challenges to personal jurisdiction are due to be **DENIED**.

### III. <u>RECOMMENDATION</u>

In view of the foregoing, it is respectfully **RECOMMENDED** that Defendant's Motion to Dismiss for Improper Service and Lack of Personal Jurisdiction (Doc. 12) be **DENIED**.

**IN CHAMBERS** in Ocala, Florida, on May 1, 2013.

PHILIP R. LAMMENS
United States Magistrate Judge

Copies furnished to
United States District Judge

- 13 -

Counsel of Record
Unrepresented Parties